1   Todd A. Chamberlain (SBN 135623)
    tchamberlain@murchisonlaw.com
2   Christy Gargalis (SBN 216622)
    cgargalis@murchisonlaw.com
3   **MURCHISON & CUMMING, LLP**
    801 South Grand Avenue, Ninth Floor
4   Los Angeles, California 90017-4613
    Telephone: (213) 623-7400
5   Facsimile: (213) 623-6336

6   Attorneys for Plaintiff, SCOTTSDALE
    INDEMNITY COMPANY

7

8              UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

| 11 | SCOTTSDALE INDEMNITY COMPANY, | CASE NO. 18-CV-06601 (GW) |
|---|---|---|
| 12 | Plaintiff, | **SCOTTSDALE INDEMNITY COMPANY'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT** |
| 13 | vs. | |
| 14 | | |
| 15 | ALL WEATHER TRANSPORT, LLC.; GILLES C. AMAJOYI; and GEORGE L. CARPENTER , | Date:   April 19, 2019<br>Time:   8:30 a.m.<br>Dept.:   9D |
| 16 | Defendants. | |
| 17 | | Judge:   Hon. George H. Wu |
| 18 | | Trial Date: July 29, 2019 |

19

20     **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

21       **PLEASE TAKE NOTICE** that on April 19, 2019, at 8:30 a.m., or as soon

22 thereafter as this matter may be heard, before the Honorable George H. Wu, United

23 States District Court Judge, located at 312 N. Spring Street, Department "9D" Los

24 Angeles, California 90012, Plaintiff Scottsdale Indemnity Co. ("Scottsdale") will and

25 hereby does move for an order granting summary judgment, or in the alternative partial

26 summary judgment, in its favor pursuant to Federal Rule of Civil Procedure 56.

27       The motion is being made following the conference of counsel pursuant to Local

28 Rule 7-3 which took place on September 27, 2018.

1     This motion is made on the following grounds:

2     1.    Plaintiff Scottsdale is entitled to a declaratory judgment that there is no
3 coverage under the policy and hence no duty to defend the underlying action pursuant
4 to the law and the terms of the insurance policy;

5     2.    Plaintiff Scottsdale is entitled to a declaratory judgment that there is no
6 coverage under the policy and hence no duty to indemnify any judgment rendered in
7 the underlying action pursuant to the law and the terms of the insurance policy; and

8     3.    Plaintiff Scottsdale is entitled to a declaratory judgment as to the Form
9 MCS-90 Endorsement pursuant to the law and the terms of the insurance policy which
10 establishes that there is no coverage under the Scottsdale policy for any of Carpenter's
11 claims as alleged in the underlying action.

12     There are no genuine issues of material fact sufficient to avoid the application of
13 the express terms of the insurance policy provisions excluding coverage for Carpenter's
14 alleged injuries. Therefore, Scottsdale is entitled to summary judgment in its favor as
15 a matter of law.

16     This Motion is based on this Notice of Motion and Motion, the attached
17 Memorandum of Points and Authorities, the accompanying Declaration of Todd
18 Chamberlain and exhibits, the pleadings and papers on file in this action, any other
19 such matters upon which the Court may take judicial notice, the arguments of counsel,
20 and any other matter that the Court may properly consider.

21 DATED: March 22, 2019        **MURCHISON & CUMMING, LLP**

22

23                By:     ***/s/ Christy Gargalis***
24                       Todd A. Chamberlain
25                       Christy Gargalis
26                       Attorneys for Plaintiff, SCOTTSDALE
                      INDEMNITY COMPANY

27

28

1

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................1

I.  INTRODUCTION ..................................................................................................1

II.  STATEMENT OF FACTS ....................................................................................1

A.  Insurance Policy..................................................................................................1

B.  Carpenter Litigation............................................................................................3

C.  October 2016 Accident .......................................................................................4

D.  Procedural History (Declaratory Relief Action) ...............................................6

III.  LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT ..................................................................................................6

IV.  THE POLICY CONTAINS VALID AND ENFORCEABLE EXCLUSIONS THAT APPLY TO CARPENTER'S CLAIMS. .............7

E.  Standard For Insurance Policy Interpretation....................................................7

F.  The Scottsdale Policy Unambiguously Excludes Coverage For Claims Arising From Injuries To All Weather Employees. .....................8

G.  The Policy Does Not Provide Coverage For Carpenter's Claims Because He Was An Employee Of All Weather At The Time Of The Accident.....................................................................................................9

1.  Carpenter admitted via judicial and evidentiary admissions that he was an employee of All Weather at the time of the Accident...................................................................................................9

2.  Carpenter and Amajoyi are employees of All Weather under the applicable federal statutory definition. ................................... 12

i.  The federal statutory definition of employee should apply in this case. ...................................................... 13

ii.  Both Carpenter and Amajoyi qualify as employees under the federal statutory definition. ................................ 15

3.  Carpenter is an employee of All Weather under California law. ............................................................................................... 18

V.  CONCLUSION..................................................................................................... 23

1

**TABLE OF AUTHORITIES**

2

Page

3

**CASES**

4

*ACE American Ins. Co. v. Walker* (2004) 121 Cal.App.4th 1017 ................................. 7

5

*Air Couriers International v. Employment Development Dept.* (2007) 150
6
    Cal.App.4th 923 .......................................................................................... 19

7

*Am. Title Ins. Co. v. Lacelaw Corp.* (9th Cir. 1988) 861 F.2d 224............................... 9

8

*Amerisure Mutual Ins. Co. v. Carey Transportation, et al.* (Mich. Ct. App.
    2007) 2007 WL 29235 ......................................................................... 13, 16
9

*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248, 106 S. Ct. 2505, 91
10
    L. Ed. 2d 202.......................................................................................... 6

11

*Bailey v. Interinsurance Exchange* (1975) 49 Cal.App.3d 399 .................................... 9

12

*Basha v. Ghalib* (Ohio App. 2008) 2008 WL 3199464 ......................................... 13, 16

13

*California Casualty Ins. Co. v. Northland Ins. Co.* (1996) 48 Cal.App.4th 1682........ 8

14

*California Ins. Guarantee Assn. v. Wood* (1990) 217 Cal.App.3d 944 ........................ 8

15

*Canal Ins. Co. v. First Gen. Ins. Co.* (5th Cir. 1989) 889 F.2d 604 .......................... 14

16

*Carolina Cas. Ins. Co. v. E.C. Trucking* (7th Cir. 2005) 396 F.3d 837 ..................... 14

17

*Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.
    2d 265.......................................................................................................... 6
18

*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800 ....... 18
19

*Congleton v. National Union Fire Ins. Co.* (1987) 189 Cal.App.3d 51 ....................... 8
20

*Consumer County Mutual Insurance Company v. P.W. & Sons Trucking, Inc.*
    (5th Cir. 2002) 307 F.3d 362 ............................................................... 13, 16
21

*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1 ............................. 10, 11

22

*Dynamex Operations W. v. Sup. Ct.* (2018) 4 Cal.5th 903 ........................................ 22

23

*Everest Nat'l Ins. Co. v. Valley Flooring Specialties* (E.D. Cal. April 14, 2009)
    2009 U.S. Dist. LEXIS 36757, No. CVF 08-1695 ................................................. 6
24

*Global Hawk Ins. Co. v. Le* (2014) 225 Cal. App. 4th 593........................................ 13

25

*John Deere Ins. Co. v. Nueva* (9th Cir. 2000) 229 F.3d 853 ..................................... 14

26

*Kennedy v. Allied Mut. Ins. Co.* (9th Cir. 1991) 952 F.2d 262 .................................. 11

27

*Key Ins. Exchange v. Washington* (1970) 7 Cal.App.3d 209........................................ 9

28

Case No. 18-CV-06601 (GW)

*Kirby v. Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059 .................. 10

*Lancer Ins. Co. v. Newman Specialized Carriers, Inc.* (N.D. Ala. 2012) 903 F. Supp. 2d 1271 .................................................................................................. 13

*Leasman v. Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376..................................... 11

*Lincoln Gen. Ins. Co. v. De La Luz Garcia* (5th Cir. 2007) 501 F.3d 436 ................ 14

*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291 ............. 18

*Lujan v. Minagar* (2004) 124 Cal.App.4th 1040 .................................................. 18, 21

*Mason v. Lake Delores Group* (2004) 117 Cal.App.4th 822...................................... 19

*Miller v. Northland Ins. Co.* (Tenn. Ct. App. Apr. 29, 2014) 2014 WL 1715076 13, 16

*Murrey v. United States* (7th Cir. 1996) 73 F.3d 1448 ............................................... 10

*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735 ........................ 9, 10, 11

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.* (9th Cir. 2000) 210 F.3d 1099 .............. 6

*Northland Ins. Co. v. Top Rank Trucking of Kissimmee, Inc.* (M.D. Fla. Jan. 29, 2013) 2013 WL 12361936 ................................................................................ 14

*OOIDA Risk Retention Group, Inc. v. Williams* (5th Cir. 2009) 579 F.3d 469 .... 13, 16

*Pacific Ins. Co. v. Kent* (C.D. Cal. 2000) 120 F. Supp. 2d 1205 ............................... 11

*Perry v. Harco Nat'l Ins. Co.* (9th Cir. 1997) 129 F.3d 1072..................................... 14

*Pinewood Investors v. City of Oxnard* (1982) 133 Cal.App.3d 1030......................... 10

*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935 ........................... 10, 11

*Progressive Mountain Ins. Co. v. Madd Transp., LLC* (11th Cir. 2015) 633 F. App'x 744 ..................................................................................................... 13

*Reagens Vacuum Truck Service, Inc. v. Beaver Ins. Co.* (1994) 31 Cal.App.4th 375................................................................................................................... 7

*Russell v. Pac. Motor Trucking Co.* (9th Cir. 2016) 672 Fed. Appx. 629 ................. 11

*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 ........................................................................................... 19, 21

*Scarff v. Intuit, Inc.* (9th Cir. 2008) 318 F. App'x 483, 487....................................... 10

*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643 ................................ 7

*Shoemaker v. Myers* (1990) 52 Cal.3d 1 .................................................................... 18

*Simpson v. Empire Truck Lines, Inc.* (5th Cir. 2009) 571 F.3d 475 ........................... 16

*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995 ................................... 18

1 | *United Financial Casualty Co. v. Abe Hershberger & Sons Trucking Ltd.*
   |    (Ohio App. 2012) 2012 WL 457715 ........................................................ 13, 15, 16

2 | *Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264 .......... 9, 10

3 | *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1 ............................................. 7

4 | *White v. Excalibur Insurance Company* (5th Cir. 1979) 599 F.2d 50 ............ 13, 16, 17

6 | **OTHER AUTHORITIES**

7 | 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 413, pp. 510-511 ...................... 10

8 | 49 C.F.R. § 390.5 ..................................................................................................... 13

9 | 49 C.F.R. § 395.3 ..................................................................................................... 17

10 | 49 C.F.R. section 390.5 ....................................................................................... 14, 15

11 | 49 U.S.C. § 304 ........................................................................................................ 17

12 | 62 FR 16370 ............................................................................................................. 18

13 | 62 FR 16423 ............................................................................................................. 18

14 | Federal Rule of Civil Procedure 56 ........................................................................ 1, 6

15 | Labor Code § 3200 ................................................................................................... 18

16 | Labor Code §3601 .................................................................................................... 19

17 | Labor Code. § 3600 .................................................................................................. 18

18
19
20
21
22
23
24
25
26
27
28

1        **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.      INTRODUCTION**

3            In October 2016, George L. Carpenter ("Carpenter") was hired as a truck driver

4    by All Weather Transport, LLC ("All Weather"). Carpenter and All Weather's

5    employee Gilles C. Amajoyi ("Amajoyi"), were acting as co-drivers taking turns

6    driving a truck from California to Pennsylvania when Carpenter alleges Amajoyi

7    slammed on the brakes causing him to sustain an injury ("the Accident").

8            Carpenter filed a Complaint in State Court against All Weather and Amajoyi

9    alleging three causes of action for negligence. Carpenter admitted both in the pleadings

10   and in discovery verified under penalty of perjury that at the time of the accident both

11   he and Amajoyi were employees of All Weather acting in the course and scope of their

12   employment.

13           At the time of the incident, All Weather was insured by Scottsdale Indemnity

14   Company ("Scottsdale"). However, the express terms of the insurance policy exclude

15   claims covered by California's workers compensation system (3rd exclusion), bodily

16   injury to an employee (4th exclusion) and bodily injury by a fellow employee (5th

17   exclusion). Accordingly, there is no coverage under the policy for any judgment that

18   Carpenter may obtain against All Weather and Amajoyi, and Scottsdale is entitled to

19   judgment in its favor.

20   **II.     STATEMENT OF FACTS**

21   **A.      Insurance Policy**

22           Defendant Amajoyi is an individual owner/driver at All Weather. Defendant

23   Carpenter was employed as a driver by Defendant All Weather on October 12, 2016.

24   (Exh. 1 [Compl.], ¶ 8.) Defendant All Weather was a federally authorized motor carrier

25   on October 12, 2016. (Exh. 1 [Compl.], ¶ 10.)

26           All Weather obtained Commercial Auto Policy No. LTI0006840 ("the Policy")

27   issued by Plaintiff Scottsdale. (Uncontroverted Facts "UF" 1; Exh. 1 [Compl.], ¶ 13;

28   Exh. 9 [Policy].) The Policy was in effect at the time of the Accident. (UF 1; Exh. 1

                                        1                    Case No. 18-CV-06601 (GW)

1  [Compl.], ¶ 13; Exh. 9 [Policy].) The Policy contains the following exclusions:

2  **SECTION II — COVERED AUTOS LIABILITY COVERAGE**

3  **B.    Exclusions**

4  This insurance does not apply to any of the following:

5  ...

6  **3.    Workers' Compensation**

7  Any obligation for which the "insured" or the "insured's" insurer may be
8  held liable under any workers' compensation, disability benefits or unemployment
9  compensation law or any similar law.

10  **4.    Employee Indemnification And Employer's Liability**

11  "Bodily injury" to:

12  a.    An "employee" of the "insured" arising out of and in the course of:

13  (1)    Employment by the "insured"; or

14  (2)    Performing the duties related to the conduct of the "insured's"
15  business; or

16  b.    The spouse, child, parent, brother or sister of that "employee" as a
17  consequence of Paragraph a. above.

18  This exclusion applies:

19  (1)    Whether the "insured" may be liable as an employer or in any
20  other capacity; and

21  (2)    To any obligation to share damages with or repay someone
22  else who must pay damages because of the injury.

23  ...

24  **5.    Fellow Employee**

25  "Bodily injury" to:

26  a.    Any fellow "employee" of the "insured" arising out of and in the
27  course of the fellow "employee's" employment or while performing duties related to
28  the conduct of your business; or

1              b.     The spouse, child, parent, brother or sister of that fellow

2 "employee" as a consequence of Paragraph a. above. (UF 2; Ex. 5, p. 50, 52-53.)

3       The Policy contains a Form MCS-90 Endorsement pursuant to which the Policy

4 is amended to assure compliance with sections 29 and 30 of the Motor Carrier Act of

5 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration

6 ("FMCSRs"). (UF 3; Exh. 1 [Compl.], ¶ 16; Exh. 9 [Policy], p. 87.) The MCS-90

7 Endorsement states "Such insurance as is afforded, for public liability, does not apply

8 to injury or death of the insured's employees while engaged in the course of their

9 employment." (UF 4; Exh. 1 [Compl.], ¶ 17; Exh. 9 [Policy], p. 87.)

10 **B.**      **Carpenter Litigation**

11       On January 27, 2017, Carpenter filed a Complaint against Defendants All

12 Weather and Amajoyi in the San Bernardino Superior Court, Case No. CIVDS

13 1701512 ("State Court Action"). (UF 5; Exh. 1 [Compl.], ¶ 11.) Carpenter alleged three

14 causes of action: (1) Negligence, (2) Negligent Hiring, Training, Retention and

15 Supervision, and (3) Negligence Per Se relating to the Accident. (Exh. 1 [Compl.], ¶

16 11; Exh 2 [State Action Compl.].)

17       In the Complaint, Carpenter makes judicial admissions that All Weather

18 employed both Carpenter and Amajoyi as drivers and that they were acting in the

19 course and scope of their employment when the accident occurred. (UF 6; Exh. 2 [State

20 Action Compl.], pp. 4-6.) Carpenter alleges that he "was hired… as a co-driver" with

21 Amajoyi (first cause of action for negligence); All Weather knew or should have known

22 its "employee" Amajoyi, was unfit for the job (second cause of action for negligent

23 hiring, training, retention and supervision); and that All Weather was in violation of

24 California Labor Code sections with respect to its "employee" Carpenter (third cause

25 of action for negligence per se). (UF 6; Exh. 2 [State Action Compl.], pp. 4-6.)

26 Carpenter also acknowledged that he provided the information to his counsel who then

27 prepared the Complaint in the State Court Action confirming the employment

28 allegations. (UF 7-8; Exh. 6 [Carpenter Depo.], p. 53:10-22.)

1   In responses to discovery in the State Court Action, Carpenter further admitted
2   that at the time of the Accident both he and Amajoyi were employees of All Weather
3   and were acting in the course and scope of their employment with All Weather. (UF 7-
4   8; Exh. 3 [Form Interrog. resp.], pp. 28:20-29:13; Exh. 8 [Special Interrog. resp.], p.
5   3:27-28.) At his deposition, Carpenter testified that he provided the information for
6   responding to the interrogatories to his attorneys. (UF 7-8; Exh. 6 [Carpenter Depo.],
7   p. 59:11-17.) Carpenter sig

8   ned verifications[1] ***under penalty of perjury*** stating he read the responses to form
9   and special interrogatories and that "the matters stated therein are true and correct".
10  (UF 7-8; Exh. 6 [Carpenter Depo.], pp. 56:22-58:6, p. 59:22-24; Exh. 6 [Carpenter
11  Depo.], pp. 149:15-151:5; Exh. 3 [Form Interrog. resp.]; Exh. 8 [Special Interrog.
12  resp.].)

13  ## C.  October 2016 Accident

14  Carpenter was unemployed from August to October 2016, and he asked Amajoyi
15  at different times whether Amajoyi (an individual owner/driver at All Weather) had
16  any work for him. (UF 9; Exh. 6 [Carpenter Depo.], p. 61:10-62:11, p. 66:14-16.) In
17  October 2016, Amajoyi contacted Carpenter, and Carpenter started working for All
18  Weather. (UF 10; Exh. 6 [Carpenter Depo.], p. 61:5-9; Exh. 3 [Form Interrog. resp.],
19  p. 28:20-22; Exh. 10 [Notes].)

20  On October 10, 2016, at approximately noon, Carpenter went to Amajoyi's yard
21  to discuss a long haul job driving to York, Pennsylvania. (UF 11; Exh. 6 [Carpenter
22  Depo.], p. 75:10-15; 81:16-23.) Carpenter reviewed, completed and signed an
23  application for employment with All Weather on October 10, 2016 (dated October 7,
24  2016). (UF 12; Exh. 6 [Carpenter Depo.], pp. 76:9-79:24, p. 81:16-21; Exh. 4
25  [Employment App.].)

26  Carpenter was to be paid $500 a week. (UF 13.) Carpenter understood that he
27
28

---

[1] Carpenter graduated from high school in 1977, and reads, writes and speaks English as his first language. (Exh. 6 [Carpenter Depo.], pp. 157:4-158:1.)

4

1  and Amajoyi were both to take turns driving the truck for the time allowed by law
2  (approximately eight to ten hours) and take their mandatory breaks largely during the
3  time when the other person was driving. (UF 14.) Carpenter understood the drive was
4  going to take three days (72 hours) of continuous driving from California to
5  Pennsylvania. (UF 15.)

6      The job started the evening of October 10, 2016. (UF 10-17; Exh. 6 [Carpenter
7  Depo.], p. 63:9-17, p. 64:7-11.) Amajoyi still had to pick up the load, but indicated he
8  would contact Carpenter that evening when he was ready to leave. (UF 16; Exh. 6
9  [Carpenter Depo.], p. 89:2-9.) Amajoyi picked up Carpenter on October 10, 2016, and
10 they left at approximately 10:00 p.m. (UF 16-17; Exh. 6 [Carpenter Depo.], p. 63:9-17,
11 p. 64:7-11, p. 75:6-24, p. 107:4-5, p. 108:5-22.) Amajoyi drove the first shift from
12 Bloomington, California to Buckeye, Arizona. (UF 17; Exh. 6 [Carpenter Depo.], p.
13 75:6-24, p. 107:4-5, p. 108:5-22.) The truck had two bunks (upper and lower). (UF 18.)

14     Carpenter slept during the first shift in the upper bunk. (UF 19.) Even though
15 Amajoyi was supposed to drive for 8 hours, he decided to pull off and sleep before his
16 time expired. (UF 20.) Carpenter woke up at approximately 7:00 a.m. (on October 11,
17 2016), at a truck stop in Buckeye, Arizona. (UF 21.) He was surprised they had stopped.
18 Amajoyi told him that he was tired. (UF 21; Exh. 6, [Carpenter Depo.], pp. 107:15-
19 108:13, p. 115:6-117:18.) Carpenter got coffee and started his first shift driving. (UF
20 22.) Amajoyi told Carpenter to stop in Phoenix to fuel up even though Carpenter
21 wanted to drive further before getting fuel. (UF 23.)

22     Amajoyi paid for the fuel and then Carpenter drove for another hour to Tucson,
23 Arizona where they stopped again because Amajoyi wanted to take a break. Carpenter
24 testified that if it was up to him, he would not have stopped. (UF 24.) After the break
25 Carpenter continued driving to Fabens, Texas (outside El Paso) to fuel up. (UF 25.)
26 Carpenter continued to drive until 8:00 p.m. when he stopped because he had met the
27 maximum amount of time he was allowed to drive pursuant to Department of
28 Transportation regulations. (UF 26.)

1   Amajoyi then began driving the next shift. (UF 27.) Carpenter contends that at
2   some point during Amajoyi's shift, Amajoyi braked hard, and Carpenter fell from the
3   upper bunk. (UF 27.) Carpenter alleges he was injured when he fell. (UF 28.)

4   **D.     Procedural History (Declaratory Relief Action)**

5   On March 5, 2018, Scottsdale filed a Complaint for Declaratory Relief in the
6   Western District of Texas (where the accident occurred). The action was then
7   transferred to the Central District Court of California. Scottsdale now seeks a judgment
8   that: (1) Scottsdale has no obligation under the Policy to defend Defendants All
9   Weather and/or Amajoyi in the State Court Action; (2) Scottsdale has no obligation
10   under the Policy to indemnify Defendants All Weather and/or Amajoyi in the State
11   Court Action; and (3) Scottsdale has no obligation under the MCS-90 Endorsement for
12   any claims arising from the Accident.

13   **III.    LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT**

14   Summary judgment is appropriate when the movant shows "there is no genuine
15   dispute as to any material fact and the movant is entitled to judgment as a matter of
16   law." (Fed .R. Civ. P. 56(a).) A party seeking summary judgment bears the initial
17   burden of demonstrating the absence of a genuine issue of material fact as to the basis
18   for the motion. (*Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323, 106 S. Ct. 2548, 91
19   L. Ed. 2d 265.) The opposing party may not rest upon mere allegations or denials of
20   the adverse party's evidence, but instead must produce admissible evidence showing a
21   genuine dispute of material fact exists. (*See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*
22   (9th Cir. 2000) 210 F.3d 1099, 1102-1103.) Material facts are facts that might affect
23   the outcome of the case. (*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248,
24   106 S. Ct. 2505, 91 L. Ed. 2d 202.)

25   In the context of employer's liability coverage, a moving party is entitled to
26   summary judgment if it proves that there is no duty to indemnify the underlying claims
27   because of governing law, policy terms, or exclusions. (*Everest Nat'l Ins. Co. v. Valley*
28   *Flooring Specialties* (E.D. Cal. April 14, 2009) 2009 U.S. Dist. LEXIS 36757, No.

1  CVF 08-1695.) Where a moving party proves that there is governing law and policy
2  language that precludes coverage, there can be no reasonable expectation of a defense
3  and consequently there is no duty to defend. (*Reagens Vacuum Truck Service, Inc. v.*
4  *Beaver Ins. Co.* (1994) 31 Cal.App.4th 375, 383.)

5       Here, summary judgment is warranted because the undisputed facts establish the
6  express terms of the Policy exclude claims which are covered by California's workers
7  compensation system (3rd exclusion), bodily injury to an employee (4th exclusion) and
8  bodily injury by a fellow employee (5th exclusion). Accordingly, Scottsdale is not
9  required to defend or indemnify Carpenter's claim against Defendants All Weather and
10 Amajoyi and Scottsdale is entitled to judgment in its favor.

11 **IV.   THE    POLICY    CONTAINS    VALID    AND    ENFORCEABLE**
12 **EXCLUSIONS THAT APPLY TO CARPENTER'S CLAIMS.**

13      All Weather tendered the defense of Carpenter's State Court Action seeking
14 damages for bodily injury to Scottsdale, and Scottsdale is currently defending All
15 Weather and Amajoyi under a reservation of rights. However, Carpenter's claims are
16 excluded under the express terms of the Policy which demonstrates there is no coverage
17 under the Policy for any of Carpenter's claims.  As a matter of law, Scottsdale therefore
18 has no duties under the Policy.

19 **E.     Standard For Insurance Policy Interpretation.**

20      The "interpretation of an insurance policy is a question of law" for the court.
21 (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.) The duty to defend is not
22 unlimited. (*Id.* at 20.) Where there is no potential for coverage, there is no duty to
23 defend on the part of the insurer. (*Id.* at 10.) Where a complaint does not present "any
24 potential for policy coverage" there is "no duty to defend" and the insurer may properly
25 deny a defense." (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643,
26 657.) A determination of whether an insurer has any duty can be based on the
27 allegations of the complaint, the terms of the policy and extrinsic evidence. (*Waller,*
28 *supra,* 11 Cal.4th at 19; *ACE American Ins. Co. v. Walker* (2004) 121 Cal.App.4th

1  1017, 1025.) Policy interpretation "is a *legal* rather than a *factual* determination."
2  (*Congleton v. National Union Fire Ins. Co.* (1987) 189 Cal.App.3d 51, 59, emphasis
3  in original.)

4       An insurer can exclude coverage by language which "is conspicuous, plain and
5  clear". (*California Ins. Guarantee Assn. v. Wood* (1990) 217 Cal.App.3d 944, 948,
6  internal citations omitted.) Where the insurer does so in unambiguous terms the insured
7  has no rights under the contract." (*Ibid.*) A court may not re-write or interpret a policy
8  to "bind the insurer to a risk that it did not contemplate, a risk for which it has not been
9  paid." (*California Casualty Ins. Co. v. Northland Ins. Co.* (1996) 48 Cal.App.4th 1682,
10 1691-1692.)

11 **F.    The Scottsdale Policy Unambiguously Excludes Coverage For Claims**
12 **Arising From Injuries To All Weather Employees.**

13      The Policy covers "all sums an 'insured' legally must pay as damages because of
14 'bodily injury' or 'property damage' to which this insurance applies." (Exh. 9 [Policy],
15 p. 50.) However, the Policy contains three relevant exclusions that unambiguously
16 exclude coverage for Carpenter's claims. First, the Policy excludes coverage for any
17 obligations for which All Weather may be held liable under workers compensation
18 laws. (UF 2; Exh. 9 [Policy], p. 52 [Exclusion (B)(3)].) Second, the Policy excludes
19 coverage for "Employee Indemnification and Employer's Liability" for "bodily injury"
20 suffered by All Weather's employees arising out of and in the course of the employment
21 or the performance of duties related to the conduct of All Weather's business. (UF 2;
22 Exh. 9 [Policy], p. 52 [Exclusion (B)(4)].) This Policy exclusion applies whether All
23 Weather is held liable as "an employer or in any other capacity", and it applies to "any
24 obligation to share damages with or repay someone else who must pay damages
25 because of the injury." (UF 2; Exh. 9 [Policy], p. 52 [Exclusion (B)(4)].) Third, the
26 Policy also excludes coverage for bodily injury of a "Fellow Employee" for bodily
27 injury to any fellow employee of an insured arising out of and in the course of the
28 fellow employee's employment or while performing duties related to the conduct of All

1   Weather's business. (UF 2; Exh. 9 [Policy], p. 52 [Exclusion (B)(5)].)

2   These and similar exclusions have been analyzed by California's courts and have
3   been found to be unambiguous and enforceable. (*Bailey v. Interinsurance Exchange*
4   (1975) 49 Cal.App.3d 399, 403 [no coverage under the "workers' compensation
5   exclusion"]; *Key Ins. Exchange v. Washington* (1970) 7 Cal.App.3d 209, 212-213 [no
6   coverage under the "bodily injury to any employee of the insured" provision when
7   claimant was injured was on a business trip at the time of the accident].)

8   **G.      The Policy Does Not Provide Coverage For Carpenter's Claims Because He**
9   **Was An Employee Of All Weather At The Time Of The Accident.**

10   Carpenter's allegations in his State Court Action Complaint, responses to
11   discovery (verified under penalty of perjury) and deposition testimony conclusively
12   establish that Carpenter's injuries arose within the course and scope of his employment
13   with All Weather. Thus, because Carpenter's claims arise from his conduct as an
14   employee in the course and scope of his employment, they are excluded under the
15   express terms of the Policy.

16   **1.      Carpenter admitted via judicial and evidentiary admissions that he**
17   **was an employee of All Weather at the time of the Accident.**

18   Carpenter's own admissions provide the clearest and most persuasive evidence
19   of the fact that he was an All Weather employee at the time of the Accident. These
20   admissions, made in both pleadings and discovery responses (again, verified under
21   penalty of perjury) are binding on Carpenter and, effectively, end this case.

22   The admission of fact in a pleading is a "judicial admission." (*Valerio v. Andrew*
23   *Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271.) Judicial admissions
24   may be made in a pleading, by stipulation during trial, or by response to request for
25   admission. (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 746.)

26   Under federal law, stipulations and admissions in the pleadings are generally
27   binding on the parties and the Court. (*Am. Title Ins. Co. v. Lacelaw Corp.* (9th Cir.
28   1988) 861 F.2d 224, 226.) Judicial admissions are formal admissions in the pleadings

1 which have the effect of withdrawing a fact from issue and dispensing wholly with the
2 need for proof of the fact. (*Ibid.*) Factual assertions in pleadings and pretrial orders,
3 unless amended, are considered judicial admissions "conclusively binding" on the party
4 who made them. (*Ibid.*) A judicial admission "trumps evidence" and serves as the basis
5 of the principle that a plaintiff can plead himself out of court." (*Murrey v. United States*
6 (7th Cir. 1996) 73 F.3d 1448, 1455.) To qualify as a judicial admission, the admission
7 must be "deliberate, clear, and unequivocal." (*Scarff v. Intuit, Inc.* (9th Cir. 2008) 318
8 F. App'x 483, 487.)

9       California law applies a similar rule. "A judicial admission (by affirmative
10 allegation in a pleading) is a conclusive concession of the truth of the matter admitted."
11 (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 961, citing *Kirby v.*
12 *Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059, 1066, fn. 4, citations
13 omitted; *Pinewood Investors v. City of Oxnard* (1982) 133 Cal.App.3d 1030, 1035.)
14 An admission in the pleadings is not treated procedurally as evidence. (*Valerio, supra,*
15 103 Cal.App.4th at 1271, citing 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §
16 413, pp. 510-511.) Instead, a judicial admission "is a waiver of proof of a fact by
17 conceding its truth, and it has the effect of removing the matter from the issues." (*Ibid.*,
18 quoting 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 413, p. 511, italics
19 omitted.) Facts established by pleadings as judicial admissions "'are conclusive
20 concessions of the truth of those matters, are effectively removed as issues from the
21 litigation, and may not be contradicted by the party whose pleadings are used against
22 him or her." (*Myers, supra,* 178 Cal.App.4th 735, 746, internal citations omitted;
23 *Pinewood Investors, supra,* 133 Cal.App.3d at 1035.)

24       An evidentiary admission has a similar impact in both federal and California
25 state courts. In *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, the
26 California Supreme Court explained that admissions made in discovery "have a very
27 high credibility value," because they are "obtained not in the normal course of human
28 activities and affairs but in the context of an established pretrial procedure whose

1   purpose is to elicit facts." (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d
2   1, 22.) When a party can establish its case with the opposing party's admissions, "the
3   credibility of the admissions are valued so highly that the controverting affidavits may
4   be disregarded as irrelevant, inadmissible or evasive." (*Leasman v. Beech Aircraft*
5   *Corp.* (1975) 48 Cal.App.3d 376, 382.) Similarly, the general rule in the Ninth Circuit
6   is that a party cannot create an issue of fact by an affidavit contradicting his prior
7   deposition testimony. (*Kennedy v. Allied Mut. Ins. Co.* (9th Cir. 1991) 952 F.2d 262,
8   266.) Thus, under the "sham affidavit" rule "a party cannot create an issue of fact by
9   an affidavit contradicting his prior deposition testimony." (*Russell v. Pac. Motor*
10  *Trucking Co.* (9th Cir. 2016) 672 Fed. Appx. 629, 630 citing *Kennedy, supra,* 952 F.2d
11  at 266; *Pacific Ins. Co. v. Kent* (C.D. Cal. 2000) 120 F. Supp. 2d 1205, 1213.)
12  Testimony is a "sham" if it "flatly contradicts earlier testimony" in an attempt to 'create'
13  an issue of fact." (*Pacific, supra,* 120 F.Supp.2d at 1213 citing *Kennedy, supra,* 952
14  F.2d at 267.)

15      "In moving for summary judgment, a party may rely on the doctrine of judicial
16  admission by utilizing" admissions "to eliminate triable issues of material fact."
17  (*Myers, supra,* 178 Cal.App.4th at 747.) "[W]here a party in discovery has made an
18  admission which justifies summary judgment in favor of his opponent, he cannot
19  attempt to defeat the summary judgment motion by submitting a declaration
20  contradicting the admission." (*Prilliman, supra,* 53 Cal.App.4th at 961.) Accordingly,
21  when such an admission becomes relevant to the determination of whether or not there
22  exist triable issues of fact, "it is entitled to and should receive a kind of deference not
23  normally accorded evidentiary allegations in affidavits." (*D'Amico, supra,* 11 Cal.3d at
24  22.)

25      Carpenter has made clear and unequivocal admissions that cannot be ignored on
26  summary judgment. In the State Court Action, Carpenter makes judicial admissions
27  that he was an employee of All Weather and was acting in the course and scope of that
28  employment at the time of the Accident. (UF 5-6; Exh. 2 [State Action Compl.], pp. 4-

**1** 6.) Carpenter's first cause of action for negligence against All Weather alleges he "was
**2** hired… as a co-driver" with Amajoyi. (UF 5-6; Exh. 2 [State Action Compl.], p. 4.)
**3** Carpenter's second cause of action against All Weather is for negligent hiring, training,
**4** retention and supervision wherein Carpenter alleges All Weather knew or should have
**5** known its "employee" Amajoyi was unfit for the job. (UF 5-6; Exh. 2 [State Action
**6** Compl.], p. 5.) Carpenter's third cause of action for negligence per se alleges All
**7** Weather was in violation of Labor Code sections with respect to its "employee"
**8** Carpenter. (UF 5-6; Exh. 2 [State Action Compl.], p. 6.) These statements constitute
**9** judicial admissions that are binding on Carpenter.

**10**     In responses to discovery, Carpenter further confirmed that at the time of the
**11** accident (on the evening of October 11, 2016 or morning of October 12, 2016) both
**12** Carpenter and Amajoyi were employees of All Weather and were acting in the course
**13** and scope of their employment with All Weather. (UF 7-8; Exh. 3 [Form Interrog.
**14** resp.], pp. 28:20-29:13; Exh. 8 [Special Interrog. resp.], p. 3:27-28.) Carpenter testified
**15** that he provided the information used as the basis for the responses to interrogatories.
**16** (UF 7-8; Exh. 6 [Carpenter Depo.], p. 59:11-17.) Carpenter signed his responses to
**17** discovery, *under penalty of perjury,* stating he read the responses to form and special
**18** interrogatories and that "the matters stated therein are true and correct". (UF 7-8; Exh.
**19** 6 [Carpenter Depo.], pp. 56:22-58:6, p. 59:22-24; Exhs. 3 [Form Interrog. resp.], 8
**20** [Special Interrog. resp.].)

**21**     Carpenter's judicial and evidentiary admissions dictate that there is no triable
**22** issue of fact on Carpenter's employment state at the time of the Accident. Because
**23** Carpenter unequivocally admitted that he was an All Weather employee at the time of
**24** the Accident, his claims are excluded under the Policy.

**25**     **2.    Carpenter and Amajoyi are employees of All Weather under the**
**26** **applicable federal statutory definition.**

**27**     To the extent the Court considers facts beyond Carpenter's admissions, the facts
**28** surrounding the Accident and Carpenter's relationship with All Weather show that

1 | Carpenter was All Weather's employee at the time of the Accident.

2 |         i.        **The federal statutory definition of employee should apply in**
3 | **this case.**

4 | A majority of Courts throughout the country, in cases such as this, have applied
5 | the federal statutory definition of "employee" contained in the FMCSRs to the
6 | interpretation of employee exclusions in policies issued to motor carriers. (*See, e.g.,*
7 | *Progressive Mountain Ins. Co. v. Madd Transp., LLC* (11th Cir. 2015) 633 F. App'x
8 | 744, 746; *Lancer Ins. Co. v. Newman Specialized Carriers, Inc.* (N.D. Ala. 2012) 903
9 | F. Supp. 2d 1271; *United Financial Casualty Co. v. Abe Hershberger & Sons Trucking*
10 | *Ltd.* (Ohio App. 2012) 2012 WL 457715; *OOIDA Risk Retention Group, Inc. v.*
11 | *Williams* (5th Cir. 2009) 579 F.3d 469, 475; *Basha v. Ghalib* (Ohio App. 2008) 2008
12 | WL 3199464; *Miller v. Northland Ins. Co.* (Tenn. Ct. App. 2014) 2014 WL 1715076;
13 | *Consumer County Mutual Insurance Company v. P.W. & Sons Trucking, Inc.* (5th Cir.
14 | 2002) 307 F.3d 362; *White v. Excalibur Insurance Company* (5th Cir. 1979) 599 F.2d
15 | 50; *Amerisure Mutual Ins. Co. v. Carey Transportation, et al.* (Mich. Ct. App. 2007)
16 | 2007 WL 29235.)

17 | The FMCSRs' definition of "employee" applied by those Courts provides as
18 | follows:

19 |         [A]ny individual, other than an employer, who is employed
20 |         by an employer and who in the course of his or her
         employment directly affects commercial motor vehicle
         safety. Such term includes a driver of a commercial motor
21 |         vehicle (including an independent contractor while in the
         course of operating a commercial motor vehicle), a
22 |         mechanic, and a freight handler. (49 C.F.R. § 390.5.)

23 | On April 14, 2014 the California First District Court of Appeal in *Global Hawk*
24 | *Ins. Co. v. Le* (2014) 225 Cal. App. 4th 593, declined to follow the federal statutory
25 | definition of employee in a case involving employee exclusions. As explained below,
26 | however, the facts of this case are distinguishable from *Global Hawk*, and that decision
27 | should not be followed here.

28 | The *Global Hawk* Court observed that the policy at issue did not contain a

13              Case No. 18-CV-06601 (GW)

1  federally mandated MCS-90 Endorsement. (*Global Hawk*, 225 Cal. App. 4th at 598,
2  608.) Unlike the policy in *Global Hawk*, the Policy issued to All Weather here, does
3  contain the federally mandated MCS-90 Endorsement. (Exh. 9 [Policy], p. 87.) The
4  purpose of the MCS-90 Endorsement is to evidence compliance by a motor carrier with
5  federally mandated financial responsibility requirements set forth in the FMCSRs.
6  However, like the Policy, the MCS-90 Endorsement amends the coverage so that it
7  "does not apply to injury to or death of the insured's employees while engaged in the
8  course of their employment." (UF 4; Exh. 9 [Policy], p. 87.)

9       The presence of an MCS-90 Endorsement in a policy issued to comply with the
10 FMCSRs strongly suggests that the entire policy should be interpreted according to
11 federal law. Courts have consistently held that the interpretation of a federally
12 mandated MCS-90 Endorsement is a matter of federal law. (*See*, *e.g.*, *Northland Ins.*
13 *Co. v. Top Rank Trucking of Kissimmee, Inc.* (M.D. Fla. Jan. 29, 2013) 2013 WL
14 12361936; *Lincoln Gen. Ins. Co. v. De La Luz Garcia* (5th Cir. 2007) 501 F.3d 436,
15 439; *John Deere Ins. Co. v Nueva* (9th Cir. 2000) 229 F.3d 853, 856; *Canal Ins. Co.*
16 *v. First Gen. Ins. Co.* (5th Cir. 1989) 889 F.2d 604, 610, modified on other grounds,
17 901 F.2d 45 (5th Cir. 1990); *Carolina Cas. Ins. Co. v. E.C. Trucking* (7th Cir. 2005)
18 396 F.3d 837, 841.) Federal law, specifically 49 C.F.R. section 390.5, provides the
19 definition of "employee" to be followed in interpreting the MCS-90 Endorsement.

20      The Ninth Circuit has applied this definition to an MCS-90 Endorsement. In
21 *Perry v. Harco Nat'l Ins. Co.* (9th Cir. 1997) 129 F.3d 1072, the plaintiff's
22 husband/decedent was killed in an automobile accident while driving for a federally
23 authorized motor carrier, Sunset Express. (*Perry, supra,* 129 F.3d at 1073.) The
24 plaintiff obtained a consent judgment against Sunset Express and sought coverage
25 under Sunset Express's policy issued by Harco National Insurance Company
26 ("Harco"). (*Ibid.*)

27      The vehicle involved was not covered under the Harco policy, but the policy
28 contained an MCS-90 Endorsement which specifically excluded liability for injury to

1    or death of Sunset's employees while acting in the course of their employment. (*Ibid.*)
2    The plaintiff contended that the MCS-90 Endorsement should nevertheless apply
3    because her husband was an independent contractor, not an employee. (*Ibid.*)

4       The Ninth Circuit held that the District Court correctly applied the definition of
5    "employee" in 49 C.F.R. section 390.5 to the interpretation of the employee exclusion
6    in the MCS-90 Endorsement. (*Id.* at 1075.) That definition includes all drivers of a
7    commercial motor vehicle. Because the plaintiff's husband qualified as an employee
8    under the definition, he was excluded under the MCS-90 Endorsement. (*Ibid.*)

9       The Policy at issue here, which was issued to comply with the FMCSRs, contains
10    an MCS-90 Endorsement. It is well-established that the endorsement must be
11    interpreted under federal law. The term "employee" as it is used in the Policy should
12    be interpreted the same way it is used in the endorsement to avoid inconsistency and
13    confusion. Using separate definitions is simply unworkable. Rather, the federal
14    statutory definition of "employee" should be applied uniformly to interpret the Policy
15    and the MCS-90 Endorsement.

16       **ii.**    **Both Carpenter and Amajoyi qualify as employees under the**
17    **federal statutory definition.**

18       If the federal definition of "employee" is applied, as it should be, both Carpenter
19    and Amajoyi qualify as employees. Amajoyi clearly qualifies as an All Weather
20    employee because he was driving a commercial motor vehicle at the time of the
21    accident. Further, the FMCSRs definition of "employee" extends to include co-drivers
22    such as Carpenter. In *United Financial Casualty Co. v. Abe Hershberger & Sons*
23    *Trucking Ltd.* (Ohio App. 2012) 2012 WL 457715, an insurer issued a policy to a motor
24    carrier with employee exclusions similar to those in the Policy issued to All Weather.
25    (*United Financial, supra,* 2012 WL 457715 at *3-4.) A driver for the insured was
26    injured while riding as a passenger in one of the insured's trucks that which was being
27    driven by one of the insured's other drivers. (*Id.* at *4.) The injured passenger asserted
28    claims against the insured motor carrier and the driver, and the insurer brought a

1  declaratory judgment action alleging that both the driver and passenger were statutory
2  employees under controlling federal law and that the policy's employee exclusions
3  therefore precluded coverage. (*Id.* at *1-2, 6.)

4      The passenger in *United Financial* argued that he was an independent contractor
5  under common law, and further argued that he should not be considered a statutory
6  employee because he was a passenger at the time of the accident. (*Id.* at *10.) The
7  Court held that the statutory definition of "employee" in the FMCSRs eliminated the
8  common law distinction between employees and independent contractors and that
9  under the FMCSRs, independent contractors are considered employees. (*Id.* at *11.)
10 The court further held that "nothing in [the statutory definition of employee] in section
11 390.5 limits an independent contractor's status as a statutory employee to times when
12 the individual is actually operating a commercial motor vehicle." (*Id.* at *13-14.)
13 Accordingly, the court concluded that the injured passenger, who was also a driver for
14 the insured, was a statutory employee and coverage for his claim was therefore
15 excluded. (*Id.* at *22.)

16      The court in *United Financial* relied on its previous holding in *Basha v. Ghalib*
17 (Ohio App. 2008) 2008 WL 3199464, in which it held that an injured passenger who
18 claimed to be an independent contractor was deemed an employee, even where he was
19 a passenger and not driving at the time of the accident. Other courts have likewise
20 confirmed that a driver sharing driving responsibilities with another is still considered
21 an employee for purposes of the employee exclusions, even while riding as a passenger.
22 (*See, e.g., OOIDA Risk Retention Group, Inc. v. Williams* (5th Cir. 2009) 579 F.3d 469,
23 475; *Consumer County Mutual Insurance Company v. P.W. & Sons Trucking, Inc.* (5th
24 Cir. 2002) 307 F.3d 362; *White v. Excalibur Insurance Company* (5th Cir. 1979) 599
25 F.2d 50, superseded by statute on other grounds as noted in *Simpson v. Empire Truck
26 Lines, Inc.* (5th Cir. 2009) 571 F.3d 475; *Miller v. Northland Ins. Co.* (Tenn. Ct. App.
27 Apr. 29, 2014) 2014 WL 1715076, *Amerisure Mutual Ins. Co. v. Carey Transportation,
28 et al.* (Mich. Ct. App. 2007) 2007 WL 29235 (unpublished opinion) [enforcing fellow

1  employee exclusion and holding that injury to driver in sleeper berth was "arising out
2  of and in the court of" employment despite the fact that the driver was "off duty" at
3  time of accident].)

4          In *White*, the Fifth Circuit Court of Appeals held that the driver in the sleeper
5  berth was an "employee" of the motor carrier even though the driver was not driving
6  the truck at the time of the accident. The Court held as follows with respect to whether
7  both drivers were "employees" under the policy at the time of the accident:

8              He was part of the two-man team actually engaged in
9              operating the vehicle on Superior's business. The team is
               indispensable to continual vehicle operation for federal law
               generally permits each driver to work only ten hours at a time
10             and then to obtain at least eight hours of rest. 49 C.F.R. §
11             395.3(a) (1977). The activities of each of the pair during a
               single driving stint, including his rest period, are clearly
               within the course of his employment. We see no reason to
12             distinguish Wright from Lindsey for purposes of his
               relationship to Superior merely because it was Lindsey's turn
13             at the wheel. Had Wright not been asleep while resting and
               had he committed some tort, such as negligently tossing an
14             object from the truck window injuring a pedestrian, Superior
               would have been liable for his acts. We therefore conclude
15             that both drivers were statutory employees of Superior within
               the meaning of 49 U.S.C. § 304(e).
16

17 (*White, supra,* 599 F.2d at 53.[2]) The Court in *White* rejected the argument that a
18 sleeping tandem driver was not actively engaged in the motor carrier's business and
19 was therefore not a statutory employee of the motor carrier, holding that the argument
20 was "specious." (*Ibid.*)

21         It is undisputed that Carpenter and Amajoyi were sharing driving duties on the
22 trip during which the Accident took place. Indeed, it was Carpenter's idea that he and
23 Amajoyi team up to maximize their driving time. [Exh. 6 [Carpenter Depo.], p. 64:1-
24 5] Courts have consistently held that one need not be operating the truck at the time of
25 the accident to be deemed a statutory employee. Rather, the courts have found that
26

27         [2]  If Carpenter had negligently injured a third party while sitting in the passenger seat (e.g., by throwing
28 something out the window or distracting the driver), there is no doubt that All Weather would be responsible for
   Carpenter's negligence to the third party as Carpenter's employer. The employee status of Carpenter and Amajoyi should
   be determined in a uniform manner, regardless of whoever's injury claims are before the Court.

1  individuals sharing driving duties, like Carpenter, are statutory employees even while
2  they are not actually in the driver's seat. Moreover, the FMCSA has issued Interpretive
3  Regulatory Guidance, published in the Federal Register, which establishes that a co-
4  driver remains on duty while riding as a passenger. The Regulatory Guidance states as
5  follows:

6        Question 13: What is the duty status of a co-driver (truck)
         who is riding seated next to the driver?
7        Guidance: On-duty (not driving).

8  (62 FR 16370, 16423.)

9        Accordingly, both Carpenter and Amajoyi should be deemed employees of All
10 Weather for purposes of the Policy's employee exclusions, and coverage is therefore
11 excluded for Carpenter's claims.

12       **3.    Carpenter is an employee of All Weather under California law.**

13       Even if the federal statutory definition of "employee" is not applied, Carpenter
14 still qualifies as an All Weather employee under California law. The Workers'
15 Compensation Act (the "Act") provides a comprehensive system of remedies for
16 workers who suffer injuries or occupational diseases in the course and scope of their
17 employment. (See Labor Code § 3200, et seq.) There is a rebuttable presumption that
18 one who furnishes services for an employer is an employee. (*Lujan v. Minagar* (2004)
19 124 Cal.App.4th 1040, 1048.) Courts apply a two-prong test to determine whether an
20 injured employee's claim fall within the exclusive workers compensation system such
21 that any claim outside the workers compensation system is preempted. First, the injury
22 must "arise[] out of and in the course of the employment." (Lab. Code. § 3600(a); see
23 also *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 15.) "To be within the scope of
24 employment, the incident giving rise to the injury must be an outgrowth of the
25 employment." (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1008,
26 citing *Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 298.)
27 Second, the acts or events giving rise to the injury must constitute "a risk reasonably
28 encompassed within the compensation bargain." (*Charles J. Vacanti, M.D., Inc. v.*

1 | *State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 819-820, citing *Shoemaker, supra,,* 52
2 | Cal.3d at 16). Workers' compensation benefits are the sole and exclusive remedy an
3 | employee has against the employer for a work-related injury. (Labor Code §3601; see
4 | also, *Mason v. Lake Delores Group* (2004) 117 Cal.App.4th 822, 832.)

5 | "[Employees]" include most persons "in the service of an employer under any
6 | ... contract of hire" but not independent contractors. (*S. G. Borello & Sons, Inc. v.*
7 | *Department of Industrial Relations* (1989) 48 Cal.3d 341, 349.) The determination of
8 | employee or independent-contractor status is one of law where the evidence is
9 | undisputed. (*Ibid.*) The Act is liberally construed to extend benefits to persons injured
10 | in their employment, and the burden of proving that a person is an independent
11 | contractor rather than employee rests with the party seeking to avoid liability under the
12 | Act (i.e. the party seeking independent contractor status). (*Ibid.*)

13 | The most important factor to determine an individual's employee status is
14 | whether the employer "has the right to control the manner and means of accomplishing
15 | the result desired." (*Borello, supra,* 48 Cal.3d at 350.) In *Air Couriers International v.*
16 | *Employment Development Dept.* (2007) 150 Cal.App.4th 923, the Court found, as a
17 | matter of law, that the drivers were not independent contractors, but instead were
18 | employees. (*Air Couriers International v. Employment Development Dept.* (2007) 150
19 | Cal.App.4th 923, 926.) The Court noted that the employer's authority to exercise
20 | complete control, "whether or not that right is exercised" was "the most important
21 | factor." (*Air Couriers, supra,* 150 Cal.App.4th at 933.)

22 | There can be no dispute here that All Weather had the right to exercise complete
23 | control over Carpenter. In fact, Carpenter recognized this distinction. Carpenter
24 | testified that for some companies such as Masoon, Roadways, Wassay, and Jackie's
25 | Transport, he was an independent contractor and that for other companies such as
26 | Werner, Aluminite, TMT, WMX, and Legend he was an employee. (UF 29; Exh. 6
27 | [Carpenter Depo.], pp. 44:3-45:19.) Carpenter testified he believed he was an employee
28 | because they "tell [him] what to do." (UF 5-6, 30; Exh. 6 [Carpenter Depo.], p. 48:15-

1   20, p. 72:2-23.) Carpenter testified that, as an employee, his employer tells him when

2   to pick up a load (Exh. 6 [Carpenter Depo.], p. 47:21-22), where the load is supposed

3   to go (Exh. 6 [Carpenter Depo.], p. 47:23-25), and how long they expect it to take to

4   get to the destination (Exh. 6 [Carpenter Depo.], p. 48:1-3). (UF 5-6, 30.) Carpenter

5   testified that "[a]s an independent contractor, I do what I want to do" as long as he

6   picked up and delivered the cargo on time. (UF 31; Exh. 6 [Carpenter Depo.], p. 73:2-

7   23.)

8         With All Weather, Carpenter had no control except as to limited matters.

9   Carpenter did not know the final destination in York, Pennsylvania or what the load

10  was in the truck; Amajoyi had this information. (UF 32.) All Weather set the schedule

11  advising Carpenter when he would be picked up for work and the length of the

12  schedule. (UF 33.) The truck had two bunks (upper and lower), and Carpenter was told

13  in which bunk he could sleep. (UF 18.) While Carpenter wanted to get the drive done

14  as quickly as possible, that was not as important to Amajoyi, and he was the one in

15  charge and told Carpenter what to do. (UF 34.) Amajoyi and All Weather determined

16  when and where to take breaks, and Carpenter testified that on at least one occasion, if

17  it was up to him, he would not have stopped. (UF 35.) Carpenter testified he preferred

18  to drive faster (75 mph) while Amajoyi preferred to drive slower (55 or 65 mph) to

19  save fuel. (UF 36.) Carpenter did not dispute All Weather had the right to control the

20  vehicle's speed, even if it did not exercise that control.

21        Second, while the "'control test" is the "most important" consideration, the

22  Supreme Court identified several "secondary factors" that may also be considered

23  including: whether the worker is engaged in a distinct occupation or business; the kind

24  of occupation, with reference to whether the work is usually done under the direction

25  of the principal or by a specialist without supervision, in the locality; the skill required

26  in the occupation; whether the principal or the worker supplies the instrumentalities,

27  tools, and place of work; the length of time over which the services are to be performed;

28  the method of payment, whether by the time or by the job; whether the work is part of

1   the regular business of the principal; whether the principal has the right to discharge at
2   will, without cause; the worker's use of helpers/ replacements; and whether the parties
3   believe they are creating an employment relationship. (*Borello, supra,* 48 Cal.3d at
4   350-351; see also CACI 3704.)

5        These secondary factors also establish that Carpenter was an All Weather
6   employee. Carpenter does not have a trucker's certificate. (UF 37; Exh. 6 [Carpenter
7   Depo.], p. 71:7-8.) Carpenter does not have any special licenses. (UF 37; Exh. 6
8   [Carpenter Depo.], p. 71:9-10.) Carpenter did not pay for the automobile insurance for
9   the trucks he drove. (UF 38; Exh. 6 [Carpenter Depo.], p. 34:5-7.) Carpenter did not
10  pay for gas. (UF 38; Exh. 6 [Carpenter Depo.], p. 34:8-9, pp. 127:23-128:4, pp. 129:17-
11  130:1, pp. 138:18-139:3.) Carpenter did not pay for vehicle maintenance, upkeep, or
12  repairs. (UF 38; Exh. 6 [Carpenter Depo.], p. 34:12-14.) Carpenter was not asked to
13  bring along any specific items on the trip. (UF 39.) And while he sometimes carried a
14  toolbox for other jobs, the toolbox was not required by the truck companies and was
15  only for his convenience and which made things faster for him. (UF 40; Exh. 6
16  [Carpenter Depo.], pp. 34:15-35:3.) Carpenter also testified that he considered he was
17  an employee whenever he signed an employment application for employment. (UF 41;
18  Exh. 5 [Mandatory Use Form].) Carpenter admitted he signed an employment
19  application for All Weather. (UF 42.) That application expressly designates the
20  applicant as an employee. (UF 42; Exh. 4 [Employment App.].)

21       In *Borello*, the Supreme Court found that cucumber sharefarmers were not
22  independent contractors, as a matter of law. (*Borello, supra,* 48 Cal.3d at 360.) The
23  Supreme Court noted they did not engage in a distinct trade or calling. (*Id.* at 357.)
24  They performed typical farm labor. (*Ibid.*) They did not invest anything but personal
25  service and hand tools. (*Ibid.*) They did not incur any opportunity for "profit" or "loss"
26  but were simply paid by the size and grade of the cucumbers they picked. (*Id.* at 357-
27  358.) Similarly, in *Lujan*, the evidence established a hair stylist was an employee.
28  (*Lujan, supra,* 124 Cal.App.4th 1040.) In *Lujan*, the employer made up the work

1  schedule and paid workers weekly. (*Id.* at 1049.) The employer provided a workstation,
2  for which the hair stylist did not pay rent. (*Ibid.*) The hair stylist did not pay for any
3  beauty supplies, all appointments were booked through the salon's front desk and the
4  customers paid the salon, not the hair stylist. (*Ibid.*) Finally, the employee's services as
5  a hair stylist were a regular part of the employer's business. (*Ibid.*)

6       Similarly, as set forth above, Carpenter did not pay for any expenses, and both
7  the fuel and maintenance were provided by All Weather. Carpenter did not provide the
8  truck, which was provided by All Weather. Carpenter did not select the route, the
9  breaks, the time of departure, the location, or the customer. Finally, Carpenter's services
10  (as a truck driver) were a regular part of All Weather's business. As such, the facts
11  clearly establish Carpenter was an employee, not independent contractor.

12       Even if there was a triable issue of material fact with respect to the *Borello*
13  factors, the test of an employee's status was recently clarified and simplified outside
14  the context of the workers' compensation system. (*See Dynamex Operations W. v. Sup.*
15  *Ct.* (2018) 4 Cal.5th 903, 957.) In *Dynamex* the Supreme Court identified an "ABC
16  test" setting forth three factors which must be met to establish a worker was an
17  independent contractor "namely (A) that the worker is free from the control and
18  direction of the hiring entity in connection with the performance of the work, both
19  under the contract for the performance of the work and in fact; and (B) that the worker
20  performs work that is outside the usual course of the hiring entity's business; and (C)
21  that the worker is customarily engaged in an independently established trade,
22  occupation, or business of the same nature as the work performed." (*Ibid.*)

23       Carpenter cannot meet the first factor (that he was free from the control and
24  direction of the hiring entity in connection with the performance of the work) as All
25  Weather supplied the truck, set the date and time of departure, paid for the fuel, decided
26  when, where, and how often to stop for breaks and fuel, and determined the location
27  and time of the delivery. Carpenter cannot meet the second factor (that he performs
28  work that is outside the usual course of the hiring entity's business) as Carpenter was

1 | driving a truck as a co-driver with Amajoyi, another driver and employee service of
2 | All Weather's trucking services. Finally, Carpenter cannot meet the third factor (that
3 | he is customarily engaged in an independently established trade, occupation, or
4 | business of the same nature as the work performed) conceding that he is often employed
5 | as an employee for numerous other companies throughout his work experience.

6 | **V.    CONCLUSION**

7 | Plaintiff Scottsdale is entitled to judgment that (1) Plaintiff Scottsdale has no
8 | obligation under the Policy to defend Defendants All Weather and/or Amajoyi in the
9 | State Court Action; (2) that Plaintiff Scottsdale has no obligation under the Policy to
10 | indemnify Defendants All Weather and/or Amajoyi in the State Court Action; and (3)
11 | Plaintiff Scottsdale has no obligation under the Form MCS-90 Endorsement for any
12 | claims arising from the October 2016, accident and/or claims asserted in the State Court
13 | Action.

14 | DATED: March 22, 2019              **MURCHISON & CUMMING, LLP**

15 |

16 |                                   By:    */s/ Christy Gargalis*
17 |                                          Todd A. Chamberlain
18 |                                          Christy Gargalis
                                             Attorneys for Plaintiff, SCOTTSDALE
19 |                                          INDEMNITY COMPANY

20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

## **PROOF OF SERVICE**

**Scottsdale Indemnity Co. v. All Weather Transport**
**18-CV-06601-GW-JPR**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California.  My business address is 801 South Grand Avenue, Ninth Floor, Los Angeles, CA 90017-4613.

On March 22, 2019, I served true copies of the following document(s) described as **SCOTTSDALE INDEMNITY COMPANY'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT** on the interested parties in this action.

**BY E-MAIL OR ELECTRONIC TRANSMISSION**:  Pursuant to the E-Filing System of the United States District Court, Central District of California, to the parties at the e-mail addresses on the Court's website.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 22, 2019, at Los Angeles, California.

Michelle L. Fisher